Case 23-13097 William E. Corey, U.S. Enterprises, Inc. v. Rockdale County, Osnedvitz, Nesbitt Sr., Sherry L. Washington, et al. Your Honor, for 25 years, Rockdale County has coveted the property of Billy Corey. They asked him to donate it. He said, No, I don't want to donate it. It's a prime piece of property at the southwest corner of Sigmund Road and I-20. It consists of 35 acres. He's 92 years old, Billy Corey is, and hearing the quickening steps of death this summer, he said, I've had enough. He sold the property. I notified the court in a supplemental filing. He brings his case, a continuation of the case, for determination of his losses pursuant to that. And that's what we're here today. So, and pursuant, we appreciate your notice of the sale, so that is going to moot the claim for injunctive relief. It does. The only way you could reach it would be that exception to the rule that it might be repeated. And I'm not urging that today. I'll leave that up to the court. So, here's what happened. This is not a zoning case. This property is zoned for a convenience store. And Quick Trip, we all go to Quick Trip, came in 2018 and said, Listen, this would be a perfect place for a quick trip. Can I ask you a question? So, you're about to talk about the takings claim, right? I'm claiming a takings claim, yes. Okay. So, in which action are you saying was the taking in your complaint of the county? This gets into the statute of limitations. Well, it gets to a lot of things, actually, some of which, by the way, help you and some of which may not. And I understand the intricacies of going through that. I would suggest that the takings claim occurred when they denied the variance. Here's the issue. This is a dismissal, as you know, and we have a complaint. You do? And here's what the complaint says. This is at paragraph 122. Yes. The truck stop ordinance is therefore a taking without just compensation as prohibited by the Constitution. Correct. The ordinance is the 2021 ordinance, isn't it? Well, here's what happened. After we came up and says, listen, we don't meet that bar on all things, that is, that it's primarily for the service of trucks. But after the Superior Court found that ordinance to be vague and ambiguous, then in 2021, they tightened it even further. So as you know, when anybody, when any legislative body has a statute that defines something, and then they come in and say, we're changing it. Yes. The other one doesn't exist anymore. The change is what's there, right? Well, except there is an exception to that, and that's the futility. Okay. So but that only would go, and I agree with you, and I want to talk about futility. Okay. Because I know you allege that. And I allege futility. You did, but that means that we're talking about the starting point being the 2021 ordinance. Well, I like that for the statute of limitations. I know you do, but you may not like it for some other things. I don't like it because you're saying, well, you haven't got a final order under the 2021. Well, that gets to futility, so let's talk about that because there is a way around it, and you allege it. That's how I know that you are alleging the 2021 complaint or ordinance. So futility, we've said that it has to be so narrowly construed, and we've said this in Lozeman just very recently. Correct. You did. As I know you know, and I was on the panel on that case. I know Lozeman, and it's not published, but it's a good— No, we published Lozeman. You published Lozeman. We did. We did. Lozeman is, and it goes to the final order issue that was left over from Williamson. That's right. And Nick. That's right. No, no, but what we also said there is, and Lozeman, talk about a history of litigation. There, as long as there was an option for him to go to the city, he couldn't say it was futile. And here, given that the allegations are that in 1999 the city accepted, although ultimately denied, a variance, that it did so again in 2019, he clearly had the option of going to seek a variance here, but didn't. Well, the suit was already in process to get a final order. And Lozeman also remembered, of course you do remember, but it was a comprehensive plan. It was tied up into whether there was a final order. And what your cases have held is, listen, we're not going to require a citizen to bloody his head in front of a county commissioner full of folks that are opposed to things if it's decided by the same folks that decided it before. And in Lozeman, that had not happened. Well, he had gone lots of times in front of that commission to ask for things. But if you look at some of our other cases, it seems to be that only where there isn't a process by which to seek a variance do we say, well, it's futile. You can't file anything because there's no accepting of it. But this is not technically a variance. It is a permit. It's a permit, but it's also the interpretation of the ordinance. In other words, and that's different from Lozeman. Also, I mean, listen, here's what we have here, a repeated effort. So if the county commission, let's say we go back and we apply for another permit, and they turn that down. And then if I have to take it to get a final order, I start the process all over again. And then, upon its own appeal, they pass another ordinance. Well, I'm not saying that that series of events could or couldn't happen. But I guess part of what wouldn't make that happen is that I think we have now made clear that only the denial by the municipality is sufficient. You don't need to go through the entire state court process in order to bring the claim. That is, I'm not sure you've made that clear. I mean, Edie, you know, in Corn 3, says that you have to have a final order. And that final order includes a judicial determination of whether it's final. Now, you know, for us country lawyers that practice and plead in the federal court, we can understand any rule. But you've left that a little bit vague. And I don't see how we ought to penalize poor Billy Corey for following what has been by this court. That's repeated. I think that's a fair point. Yeah. Now, so to answer your question directly, Judge Lipp, oh, I've eaten out of my time. To answer your question directly, 2018 was the effective date of the—and because they—we would have a right. If we had won in state court, we would have had a right to develop under the 2018 ordinance without the 2021 ordinance. I think that's right, but I'm not sure that matters for the purposes of your federal lawsuit. Well, I respectfully disagree with that because it goes to whether there is a taking. If we had won, there would have been no taking. And so what we have here is a repeated effort over a long period of time to keep this guy from developing this property because they wanted it. And what happened to it? When he finally threw his hands up and says, I give up. I will sue for my losses. They, the county, came in and bought his contract. His contract was not with the county. They came in and bought it from the buyer, bought his contract, and closed it. Can I ask you another question about the complaint? The equal protection claim. Yes. Is that triggered off of the 2019 litigation and the 2006 ordinance? Or is that triggered off of the passage of the 2021 ordinance? Either one. Well, a complaint— I know. Two things can't exist at the same time. The complaint has to allege one or the other. The equal protection is, I attached pictures. You did. I've looked at all of them. Well, I understand. I'm just glad this is not a child pornography case. I've had enough of child pornography today.  And I know you all have too. But the truth of the matter is, it occurred under the 2018 ordinance. Now, I still had to get a final order. And we suggest the statute of limitation is— But doesn't that affect ripeness? I don't think so. No, because it is a—it does affect—yes, to get a final order affects ripeness. In other words, if you don't— If you don't have constitutional claims, I'm going to reserve the rest of the time because my distinguished brother, I am sure, will say some things that I want to reply to. And you have five minutes for rebuttal. Mr. Mitchell. And please inform my name is Thomas Mitchell, and I represent Rockdale County. In addition to Lozeman, and I don't know what the court's particular interests are, I'm prepared to talk about statute, res judicata. Well, let's talk about a few different things. Because let's talk about standing, first of all, because I think there's a misunderstanding here regarding standing. This court seemed to have the view, and correct me if I'm wrong, that at least with regard to the 2006 ordinance and the 2019 litigation, that because they had not sought a permit—regarding—I'm sorry. So regarding the 2021 ordinance, because he had not sought a permit for it, that he couldn't have standing for that. But that is not quite how I understand standing doctrine. As I understand standing doctrine, we assume at standing that there is a violation. In other words, we assume that there's a taking, and then we ask the question of whether there has been injury or not. And so I'm not sure we ask, well, he didn't go through it, and it's not ripe, and there's a statute of limitations issue, or it's not ripe yet, and therefore there's not standing. Those are separate things. One goes to ripeness justiciability, but as to standing justiciability with regard to the complaint, all we look to, it seems to me, is he alleges that the property was taken. He alleges it very specifically by this ordinance, and it may have other defects, but I don't see how that's not an injury. Well, the standing issue is if he hasn't applied for the permit, and that's the critical thing between the 2019 ordinance and the 2021 ordinance. And this is not like the other cases. I understand. So in 2021, he has not applied for a permit. That's correct. So how does that affect standing? Well, because admittedly the cases that we rely on are the billboard cases. It said if you haven't applied for the necessary permits, if you haven't done the necessary administrative stuff to be even able to do what you want to do with the property, then you don't have standing to come to federal court and complain about it. Right, but this is a takings case under just compensation, and so this isn't a billboard application case of whether you met the requirements of the permit. This is they passed a law and took my property. Well, and then I guess with regard to taking, his response to the standing argument has been ripeness. Well, those are different things. His response may be wrong, but I'm asking you because we have to look at that anew ourselves. That isn't a matter of preservation. That's a matter of us getting it right under Article III jurisdiction. If he alleged that the 2021 ordinance took my property, why is that not an injury? Well, if you're talking about takings until there has been a final decision. No, that's not. You're mixing standing with the merits. The question is how is there not an Article III injury or a case of controversy so that there is standing? Well, then if the only thing with regard to standing is that they have to allege that they've been injured, then the complaint itself would need that. Isn't that exactly what it is? It would need that requirement. Okay. So then I guess the question becomes the ripeness. Okay. We'll get to ripeness in a second, but I want to get to the res judicata part. Okay. And I can get the court a new case on that. You can. Give me one second, though.  Let me ask my question before you give me the new case.  And that is if we're talking about the 2021 ordinance, isn't that inherently different under Cohen and whatever the new doctrine is in Georgia that they decided this day that you're about to tell me about? Isn't that very different as a matter of both fact and a matter of remedy than the litigation under the 2006 ordinance and the state litigation in 2019? I would agree with that, Your Honor. Okay. If you're talking about two different ordinances, and that's what the Georgia Supreme Court said in the Corriedale case.  The case I was going to give the court was Starship, which was decided this summer. And it fits more neatly with the facts of this case, but that argument is only going to apply with regard to the 2019. Agreed. Which I think is barred by res judicata and statute of limitations. So it might be for cases, if the complaint is triggered off the 2019 litigation, then I think possibly you're right. But if it's triggered off the 2021, this is why I ask the questions of your learned opposing counsel, because I think he wins on res judicata if it's a different statute. Yeah, and I think that's right. Because it's not like the Sheba case where you're talking about the same decision. That's right. It's more like the Supreme Court case in Corriedale, in Corrie, which said if you've got two different ordinances, then res judicata does not apply. All right. Now let's get to ripeness. Okay. With regard to the equal protection claim, it seems to me that that one is best read as applying or as saying that I was, the 2006 ordinance has been misapplied to me because I have been trying to get a permit to do this, and these folks are trying to get, these folks had a permit and were allowed to do this other thing. As to that, doesn't he meet the ripeness requirement, having been through and gotten in denial? Ripeness for the 2021? No. So on the equal protection we're talking about now, it seems to me the equal protection claim, and your learned counsels up here just said, that's off the 2019 litigation from the 2006 ordinance. Okay. Well, then he's got statute of limitations and res judicata problems with regard to that. He may have res judicata, but let's talk about statute of limitations. The question I asked was ripeness. You would agree the claim is at least ripe because he's sought a permit and was denied a permit for that. Under the 2019 ordinance? Right. Right. Okay. Now let's go to statute of limitations. Okay. Why is he not right that we have read Williamson, at least in certain contexts, to mean that for finality, not for exhaustion, but for finality, you have to complete state court litigation? Because Nick and Packdale eliminated that. Nick eliminated is the exhaustion requirement, but if we read, assume for the moment, if we have read the finality requirement to require that you finish state court litigation, wouldn't Nick have nothing to do with that? Well, if that's your conclusion, then that's inconsistent with Nick, because Williamson also says that its finality was the decision of the agent. I agree with what Williamson says, but we have cases after Williamson which seem to suggest, and your opposing counsel was up here and just mentioned one of them, Quorum 3, where we said, and I will not comment on what I believe to be the correctness of the decision, but I will just read to you what the decision says. It says, quote, under Federal law, taking claims do not mature or ripen until planning authorities and State review entities have made a final determination on the status of the subject property. And it used the term, it used the term, do not mature or ripen, and then the status of Korn's property was not determined until the state court litigation issued the writ of mandamus. And then it ended. In suits for deprivation of property under 1983, the same considerations that render a claim premature prevent accrual of a claim for limitations purposes, and the claim does not accrue until the governmental authorities have made a final decision on the fate of the property. But it's the one, it's the entity or the government that makes the decision. In this case, it was the denial of the permit. I know, but what do we do with the reference there that does not mature or ripen? In other words, ripeness. We're not talking about anything else, but ripeness does not come until the planning authorities and State entities have made a final decision on the status. That's not just the planning authorities, but the State review entities. Then that's going to be inconsistent with Nick and all the cases that have come from the Supreme Court since then. I'm not saying that it's not, but I don't know how Nick would abrogate that, even though Nick has said, has intimated or essentially reiterated the standard from Williamson. I don't see how it abrogates that language. It abrogates it because the only thing the court has to look at to determine when the timing is triggered is when the final decision maker at the local government who's making, not the judicial review. I know that's what Williamson says. I think you're right as a matter of what Williamson is trying to tell us, but I think we have case law which seems to suggest that it isn't just the planning authorities, but also the State court review that have made a final determination on the status that does accrual, that is relevant for accrual and ripeness. All I can say is that that would be incorrect after Nick and Packdale and the Texas case and the others. Let's assume for the moment it's not, that those cases don't abrogate, and so our standard is that. You would agree then that the action here would be within the statute of limitations with regard to the equal protection claim? Yes, I would have to concede that. Okay, if we agree that that's the law. If that's the law, but again, in light of Nick and the other cases, that can't be. All right, so that takes care of standing. That takes care for the equal protection claim. That takes care of ripeness statute of limitations for the equal protection claim. Let's get to res judicata, because there, unlike if it's triggered off the 2021 ordinance, there is a res judicata issue, is there not? There is. And what is that? At this point, I'll give you the Starship side. It was decided this summer, and that's Starship versus Gwinnett County, 319 Georgia, 293 903 Southeastern 2nd 55. Is that a Georgia Supreme Court decision? It is a Georgia Supreme Court case. It deals with res judicata, which as this Court knows, you follow their rules with regard to this. Starship had filed a complaint. Gwinnett County had filed a counterclaim for injunctive relief. Starship dismissed their underlying claim for the constitutional claims. The counterclaim for injunctive relief continued. There's lots of footnotes and everything else. At the end of the day, what the Court concluded was that because Starship could raise the constitutional claims in defense against the injunction, that prior litigation was res judicata to the claims that they were trying to raise now. That because the constitutional claims could have been litigated in that previous litigation, notwithstanding the fact that they had voluntarily dismissed them, they could still litigate the claims in support of the— They argue, though, that at least under our case law, and I'm speaking of Jennings, that they are allowed to make a reservation, which says, hey, we're not going to bring the claims here. We're going to bring them to federal court. And they, in fact, did that here. They followed it almost word for word. Why is that not an exception, at least as we interpret our own law to the res judicata issue? Our position on that, Your Honor, is that Nick Jennings doesn't survive the Nick line of cases. So we would have to find that Jennings has been abrogated by Nick. No, we've never said it before. We would have to actually find that. I believe so because, I mean, yes, in the actual things that he put before the county, they specifically referenced— Because otherwise, if Jennings is still good law, you would lose the res judicata issue on the equal protection claim. No, I think that's only going to apply to the takings claim. I don't think it's going to apply to the equal protection claim. We just discussed this. The takings claim is triggered off the 2021 ordinance, and res judicata doesn't apply there, so there's no Jennings issue. But for equal protection, it's triggered off the 2019 litigation, and that does implicate res judicata. But if Jennings is still good law, that would give him an exception, would it not? Well, Jennings was—as I understood Jennings, what it had to do with if they wanted to pursue their takings claim in— they had to pursue their takings claim in the inverse claim or however it was characterized by whatever the state was before they could come to federal court and make those arguments. Now, if they had other federal arguments, then all well and good. But Jennings, as I understood it, is a takings—is in the area of takings jurisprudence and doesn't apply with regard to the others. Okay. I just want to ask a few questions on the merits. So let's assume for the moment we get past all of these other things and get to the merits. Let's start with the takings claim, for example. Okay. He argued below and argues here that district court, you got it wrong because you treated this as a per se taking, but in fact I litigated this as a partial regulatory taking under Penn Central, and you're required to apply these factors, and you didn't do that, and so you erred. Why is that wrong? Well, the—regardless of what kind—whichever the four kinds of takings claims are alleging, that they don't—the pleading doesn't meet the requirements. Let's do it under Penn Central. Why wouldn't it meet the Penn Central one? Penn Central itself says that in particular the prohibition of a—and understand, and we kind of jumped into this without talking about the facts. Rockdale County— I'm pretty familiar with the facts. But they prohibit truck stops. They don't prohibit convenience stores. They don't prohibit the other—any of the other uses. They've only prohibited— I know, but he is—but he has alleged, whether it's true or not, we have to take it as true. He has alleged that by limiting me from a truck stop, I can't build anything else. No one will buy this property, and it is now rendered worthless. Well, he doesn't allege that, but he doesn't—in the record are all the under C-2 uses that can be used. He just simply—this is the highest, and the Penn Central case says just because you can't use the property for whatever you consider to be the highest and best use doesn't mean that it's a taking if, in fact, there are other uses to which the property can be put. That is 100 percent true. But what he says is—and again, I—we have to take it as—we have to take it as fact here that the history of the ownership and efforts to sell the property by plaintiff shows there is no other economically viable use of the property except a convenience store serving both automobiles and light and heavy trucks. And we know under the truck stop ordinance, he's not allowed to do that. So—and that's paragraph 137 of the complaint. And that's not—that, in fact, is not the case under the ordinance. It just says it can't be—it can't meet those requirements of a truck stop. He may—Counsel, I'm not saying he's not wrong. I'm just telling you that's what he's—that's what he's alleged—that's what he's alleged, and that's what we have to take as a given. Right. But given what the ordinance says and the fact that the—they can still—they could build a quick trip that had diesel and had what they can't do— But not a raised roof, not a turn radius, not any parking for trucks, not any number of other things that trucks need in order to be able to use gas there. Whether they need it or not, all they got to do is be able to pull up to a tank and stick the nozzle in the tank. It doesn't have to have a canopy and all that. I understand. But again, you may be right, but what I'm telling you is the complaint alleges that, and so I don't think that part of Penn Central answers the question. What else, if we analyze this under Penn Central, is this not sufficiently alleged? Again, because the complaint alleges that there's one use in light of all of the other uses that can be done under C-2 that can't be done. And what Penn Central says is just because you can't do one use, even if it's the best possible use of the property, if there are other uses for the property, then you do not—you do not have—you might have other kinds of claims, but you don't have a takings claim. I'm fine. Thanks. Let me comment on just two things. First, let's talk about Ray Sciuticata. The Georgia Supreme Court is not the authority on this. You are because of Jennings. Now, he would say—he just told you, my distinguished brother, great guy, wonderful lawyer, but he says that Nick repealed Jennings. Well, now for us old country lawyers pleading in practice in federal courts, how about giving us some notice on that? We have historically held—you have historically held repeatedly that you are not limited to the state courts deciding a federal cause of action and that we can split those. If that's no longer the law, then we need to know that. But I suggest to you that is not what Nick said. He would have you to read that Nick was just an upset of the law that did away with N. Ray Young, Armstrong, and all of those guys. You make—Counsel, you make a good point on the notice point. That's something I need to think about. But I will say the underlying premise of Jennings, the reasoning of Jennings, was that you were—plaintiffs like you were in a box. Yes. And that's not a fair thing. And so Jennings was a way out of the box.  But the box doesn't exist anymore. Well, does it? We suggest it does because you still have to have a final order. Now, what you will do is—remember this, that if you throw all of these cases—if you don't have to go through, and this bleeds over into our discussion earlier, a final order, what's going to happen practically? That means there are literally hundreds of zoning cases that are filed every year just in the state courts of Georgia. So we're going to have to run down here, file a federal action while we litigate the state action. And you're covering up the federal courts where the final order gives a time that most of these cases get settled. So I say there's a practical side to it and there's a legal side to it. And we thought you've got to overrule three cases, Eadie, Port Largo, and Corn III. I'm not sure I agree with you on Eadie and North Port, but I think I might read Corn the way you've read it. And not that y'all would ever make a mistake, but it's just that it needs to be clear to us. I mean, we country lawyers want to follow the law and we want to plead the law. Now, let me talk just a moment about Penn Central. There is three or four basics. You can have an occupation. You can have a restriction that's so badly. You can have a damage that is less than a total taken. In fact, that's what Penn Central was. Penn Central was based on a free tax tax. Donald Wilhelm said that the language was the restriction and regulation went too far. And in this case, it's perfectly a Penn Central case. Does the existence of these other places that service trucks undermine a little bit your statement? Of course not, because they were doing it illegally. Well, whether it's legal or not is besides the point. If there are places that comply with the truck stop statute that are servicing trucks, now maybe dangerously, but are servicing trucks, does that undermine that you have no economically viable use for the property? That's a question of fact, Judge. I don't know that it is. It's in the complaint. I mean, you attach the pictures of it. I do, and it's a question of fact, though, as to where it's economically viable. Let me tell you, they admitted, I'll have to find it in the article, none of these places were operating legally. And, in fact, at the Board of Adjustment— Don't you have to plead the, as part of Penn Central, the investment-backed expectations? And I think that we have, and what we— The allegations are that you bought the property, you, your client, in 1996, and then it says, it skips and says, in 1999 he wanted to build a truck stop. Correct. It doesn't say he bought it for the purpose of building a truck stop. Well, Judge, I would, if, after Ickbar and Twombly, we're almost back to a cold pleading state. I drafted this complaint and typed it myself. It's a hundred and something paragraphs. If I've missed one little allegation, I'd certainly say the district court should give me an opportunity to plead. Thank you, Judge. Thank you. Thank you both. We have your case under advisement. Thank you.